UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Case No. 8:11-bk-00369-MGW
                                                    Chapter 13

Tahisia L. Scantling,

     Debtor.

_____/

**ORDER AND MEMORANDUM OPINION**
**ON STRIP OFF IN CHAPTER 20 CASES**

     The Debtor in this chapter 20[1] case seeks to strip off wholly unsecured junior mortgages encumbering her principal residence. The creditor objects because the Debtor previously received a discharge of her debts in a chapter 7 case filed within four years of her chapter 13 case, and therefore, she is not eligible for a discharge. For the reasons set forth below, the Court overrules this objection and concludes that eligibility for a discharge is not a requirement to strip off of a wholly unsecured junior mortgage in a chapter 20 case.

**Factual and Procedural Background**

     The Debtor moved to determine the secured status of second and third mortgages on her homestead.[2] Those mortgages, currently held by Wells Fargo Bank, N.A., secure approximately $104,000 in debt. Wells Fargo also holds a first mortgage on the Debtor's homestead. That mortgage secures approximately $122,000 in debt. According to the Debtor's motion to determine secured status, the value of the her homestead is $118,000. That means Wells Fargo's second and third mortgages are wholly unsecured, and as a consequence, the Debtor seeks to strip off those mortgages.

_____

[1] A "Chapter 20" is a chapter 13 case filed on the heels of a chapter 7 case in which the debtor obtained a discharge of all of the debtor's debts.

[2] Doc. No. 43.

Wells Fargo, however, claims that the Debtor cannot strip its second and third mortgages because she is not eligible to receive a discharge in this case.[3] Under Bankruptcy Code § 1328(f), a chapter 13 debtor is not eligible for a discharge if the debtor received a discharge in a chapter 7 case filed within four years of the chapter 13 case. Here, the Debtor filed a previous chapter 7 case on November 27, 2009—less than fourteen months before she filed this case. The Debtor received a discharge in that case. So she is not eligible for a discharge in this case.

At the preliminary hearing on the Debtor's motion to determine secured status, the Court decided to bifurcate the final hearing on the Debtor's motion so that it can first determine as a matter of law whether the Debtor can strip off Wells Fargo's second and third mortgages. The sole issue before the Court, then, is whether a debtor can strip off a wholly unsecured junior mortgage in a chapter 20 case.[4] Courts are currently split on this issue.[5] And as of yet, the Eleventh Circuit has not addressed this specific issue.

## Conclusions of Law

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

In analyzing whether a chapter 20 debtor can strip off a wholly unsecured junior mortgage, the Court first looks to Supreme Court and circuit court cases that have addressed

---

[3] Doc. No. 45 at ¶ 2.

[4] The order following the preliminary hearing further provided that, if necessary, the Court would conduct an evidentiary hearing on any remaining factual issues, including the value of the subject property, resulting from the Court's ruling in this Memorandum Opinion. Doc. No. 58 at ¶ 3.

[5] Even within this District, the bankruptcy courts are divided on the issue. For example, Judge Arthur B. Briskman, in *In re Judd,* 2011 WL 6010025 (Bankr. M.D. Fla. Dec. 1, 2011), held that a lien strip in a chapter 20 is not permitted. *Id.* at *4 (citing *In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011) and *In re Quiros-Amy*, 456 B.R. 140 (Bankr. S.D. Fla. 2011)). Judge Catherine Peek McEwen has expressed the contrary view in tentative rulings made on December 14, 2011 and February 8, 2012, in the case of *In re William & Susan Claburn*, Case No. 8:11-bk-11381-CPM, citing *Fisette v. Keller (In re Fisette)*, 455 B.R. 177 (8th Cir. BAP 2011) in support of the proposition that a lien strip is permitted in a chapter 20—a view adopted in this Opinion.

either chapter 20 cases or lien stripping since the early-1990's. Although none of those cases directly address the issue currently before the Court, they do provide certain principles to guide the Court's analysis. The Court must then consider the applicable Bankruptcy Code provisions in light of those guiding principles. Finally, the Court must also consider the reasoning underlying the opinions by courts ruling that strip offs in chapter 20 cases are not permitted under the Bankruptcy Code. Based on this analysis, the Court concludes that a debtor may strip off a wholly unsecured junior mortgage in a chapter 20 case even though the debtor is not eligible for a discharge.

*Supreme Court and Circuit Court Precedent*

<u>Johnson v. Home State Bank</u>

There are three Supreme Court cases that relate either to strip off or chapter 20 cases. The first case is *Johnson v. Home State Bank*.[6] In *Johnson*, the Supreme Court considered whether a debtor can include a mortgage lien in a chapter 13 plan if the personal obligation secured by the mortgaged property had been discharged in a prior chapter 7 case. The Supreme Court concluded that such relief was available.

*Johnson* involved a mortgage on farm property owned by the debtor. When the debtor defaulted under a promissory note secured by the farm property, the bank sued to foreclose in state court. The debtor then filed for chapter 7, and his personal liability on the promissory note was ultimately discharged. As is typical, the bank obtained stay relief to continue with the state court foreclosure proceeding. The bank eventually obtained an *in rem* foreclosure judgment against the debtor, but before the foreclosure sale took place, the debtor filed for chapter 13. The

---

[6] 501 U.S. 78 (1991).

debtor scheduled the bank's mortgage as a claim and proposed to pay the bank over the five-year term of the plan.

In concluding that such relief was available to the debtor, the Supreme Court held that, "[s]o long as a debtor meets the eligibility requirements for relief under Chapter 13 . . . he may submit for the bankruptcy court's confirmation a plan that 'modif[ies] the rights of holders of secured claims . . . or . . . unsecured claims,' . . . and that 'provide[s] for the payment of all or any part of any [allowed] claim.'"[7] Because the debtor's personal liability under the note was extinguished in the prior chapter 7, what remained intact was whatever *in rem* rights continued to exist against the debtor's property. It was these *in rem* rights that were subject to administration in the subsequent chapter 13 case.

The *Johnson* Court also dealt with the serial filing aspects of a chapter 20 case. The bank contended in *Johnson* that allowing successive filings would "evade the limits that Congress intended to place on these remedies."[8] In considering this argument, the Court noted that Congress expressly prohibited various forms of serial filings. For instance, Bankruptcy Code § 109(g) prohibits filings within 180 days of dismissal, and § 727 limits the right to a discharge in successive filings.[9] "The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief."[10] So *Johnson* recognized a debtor's right to file a chapter 20 case.

---

[7] *Id.* at 82 (citing 11 U.S.C. § 1322(b)(2) & (6)) (internal citations omitted) (alteration in original).

[8] *Id.* at 87.

[9] *Id.*

[10] *Id.*

<u>Dewsnup v. Timm</u>

The second case is *Dewsnup v. Timm*.[11] In *Dewsnup*, a chapter 7 debtor sought to strip down a creditor's lien on real property to the value of the collateral. The debtor argued that this could be accomplished by valuing the collateral under § 506(a) and then voiding the lien under § 506(d). Bankruptcy Code § 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." Section 506(a), of course, provides that a claim is secured only to the extent of the value of the collateral.

The Supreme Court rejected this approach because it was based solely on § 506(d). According to the Court, § 506(d), when read "term-by-term," refers to any claim that is first "allowed" and second "secured." Since there was no question that the claim in *Dewsnup* was allowed under § 502 and was secured by a lien on the underlying collateral, it did not come within the scope of § 506, which only voids liens securing claims that have "*not* been allowed."[12]

Viewed in context, it appears that the debtor in *Dewsnup* was attempting to reorganize her secured debt in a chapter 7 case without the benefit of the reorganization provisions in chapters 11, 12, or 13.[13] If the debtor were able to strip down a lien in a chapter 7 case to the value of the collateral without the ability to reorganize the remaining secured claim, the debtor would then either have to pay off the full amount of the claim or lose the collateral to the secured creditor in foreclosure. While not discussed in *Dewsnup*, this is, in effect, a similar result to that already provided for in Bankruptcy Code § 722, which allows a debtor to redeem tangible personal property. This provision—the only provision in chapter 7 that allows a debtor to retain

---

[11] *Dewsnup v. Timm*, 502 U.S. 410, 411-12 (1992).

[12] *Id.* at 415 (emphasis in original).

[13] 11 U.S.C. §§ 1322, 1325, 1222, 1225, 1123 & 1129; *see also Dewsnup*, 502 U.S. at 418-19 ("Apart from reorganization proceedings, no provision of the pre-code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt.") (internal citations omitted).

collateral by simply paying the amount of the secured claim—is limited by its terms to personal property. Thus, *Dewsnup* recognized that § 506(d), by itself, is insufficient to strip a lien on a debtor's homestead. Section 506(d) must operate in tandem with another Bankruptcy Code provision to strip a lien.

<u>Nobelman v. American Savings Bank</u>

The third case is *Nobelman v. American Savings Bank.*[14] The question before the Supreme Court in that case was whether § 1322(b)(2) prohibits a chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence. Bankruptcy Code § 1322(b)(2) provides that a chapter 13 plan may not modify the "rights of holders of secured claims . . . secured only by a security interest in . . . the debtor's principal residence." The debtor in *Nobelman* argued that § 1322(b)(2)'s anti-modification provision applies only to the extent the mortgagee holds a "secured claim" in the debtor's residence. Under this argument, the court would first look to § 506(a) to determine the value of the mortgagee's "secured claim." The secured claim would then be stripped down to the value of the collateral.

The Supreme Court rejected this interpretation because it failed to take into account § 1322(b)(2)'s focus on "rights."[15] Simply put, a mortgage holder's rights, which are protected by § 1322(b)(2), are not limited by the value of its secured claim. Rather, the creditor's rights, including the right to retain the lien until the debt is paid off, are derived from the creditor's mortgage instruments. It is these rights, bargained for by the mortgagor and the mortgagee, that

---

[14] *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993).

[15] *Id.* at 328.

are protected from modification by § 1322(b)(2).[16] And these rights are contained in a "unitary note" that applies to the bank's overall claim, which includes its secured and unsecured components.[17]

In re Tanner

But *Nobelman* only dealt with a claim that was partially undersecured. In *Nobelman*, it was the existence of some collateral for the bank's claim that made the bank a "holder" of a "secured claim" that brought into play § 1322(b)(2)'s anti-modification provision protecting the "rights" of the holders of even partially secured claims.[18] This left open the issue of whether *Nobelman*'s holding extends to wholly unsecured junior mortgages. While the Supreme Court has never addressed this precise issue, a number of circuit courts of appeal and bankruptcy appellate panels have weighed in since *Nobelman*. These courts—including the Eleventh Circuit in *In re Tanner*—have held that § 1322(b)(2)'s anti-modification provision does not bar a chapter 13 debtor from stripping off a wholly unsecured lien on the debtor's principal residence.[19]

These opinions recognize that where a junior mortgage is determined to be wholly unsecured under § 506(a) because the amount of the senior mortgage exceeds the value of the collateral, then the debtor has the right under § 1322(b)(2) to modify the "rights" of the holder of

---

[16] *Id.* at 330 (citing *Dewsnup*, 502 U.S. at 417).

[17] *Id.* at 331-32.

[18] *Id.* at 329.

[19] *See, e.g., Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1222-23 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663, 669 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 127 (2d Cir. 2001); *Tanner v. First-Plus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1359-60 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 288-91 (5th Cir. 2000); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606, 609-612 (3d Cir. 2000); *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 167-70 (10th Cir. BAP 2005); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (1st Cir. BAP 2000); *Fisette v. Keller (In re Fisette)*, 455 B.R. 177, 181-83 (8th Cir. BAP 2011).

the secured claim by extinguishing the *in rem* lien rights that would otherwise exist under

nonbankruptcy law. As discussed in *Tanner*,

> [a]n analysis of the state law "rights" afforded a holder of an unsecured "lien," if such a situation exists, indicates these rights are empty rights from a practical, if not a legal, standpoint. A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing.[20]

*Summary of Relevant Precedent*

So what guidance do these Supreme Court and circuit court cases provide in deciding the

issue in this case? Those cases can be distilled down to four principles. First, *Johnson* instructs

us that there is nothing in the Bankruptcy Code that prohibits a chapter 20 case. So long as the

debtor meets the eligibility requirements for relief under chapter 13, the debtor may propose a

plan that modifies the *in rem* rights of a holder of a secured claim, even after the debtor's

personal liability on that debt has been extinguished in a prior chapter 7.[21] Second, under

*Dewsnup*, the rights of holders of secured claims cannot be modified in a chapter 7 case because

§ 506(d) does not operate by itself to strip a lien; it must operate in tandem with another

provision to strip a lien.[22] Third, *Nobelman* makes clear that § 1322(b)(2) cannot be used to

modify the rights of a holder of secured claim where any portion of the claim is secured by the

debtor's principal residence. Even one dollar of collateral value in excess of the superior

mortgage debt brings into play the anti-modification provision prohibiting a debtor from

modifying a claim secured by the debtor's principal residence.[23] Fourth, all of the circuit courts

---

[20] *In re Tanner*, 217 F.3d at 1360 (citing *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 40 (9th Cir. BAP 1997), appeal dismissed, 192 F.3d 1309 (9th Cir.1999)).

[21] *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991).

[22] *Dewsnup v. Timm*, 502 U.S. 410, 418-19 (1992).

[23] *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329-30 (1993).

of appeal and bankruptcy appellate panels that have considered the issue, including the Eleventh

Circuit in *Tanner*, have held that *Nobelman*'s holding does not extend to wholly unsecured

homestead mortgages.[24] Section 1322(b)(2) does allow a debtor to strip off a wholly unsecured

lien on the debtor's principal residence. While these four principles provide guidance, they do

not specifically address the issue before the Court in this case. So the Court must now look to the

applicable Bankruptcy Code provisions in light of these guiding principles.

*Application of the Bankruptcy Code*

As the circuit courts and bankruptcy appellate panels permitting lien stripping recognize,

the right to lien strip arises out of—and, indeed, those courts focus exclusively on—the interplay

between § 506(a) and § 1322(b)(2). Section 1322(b)(2) permits a debtor to modify the rights of

the holder of a secured claim so long as the claim is not secured by the debtor's principal

residence. Under § 506(a), a wholly unsecured junior mortgage is not a claim secured by the

debtor's principal residence. Accordingly, a debtor can modify the rights of a wholly unsecured

junior mortgage in a chapter 13 case. And the same ought to be true in a chapter 20 case absent

some prohibition to the contrary.

Courts holding that a chapter 20 debtor may not strip off a wholly unsecured junior

mortgage—such as *In re Gerardin*[25] and *In re Quiros-Amy*[26]—believe they have identified such

a prohibition: Bankruptcy Code § 1325(a)(5). That section requires, as is relevant to this case,

that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of the

payment of the underlying debt under nonbankruptcy law or entry of a discharge. Because

---

[24] *See, e.g.*, *In re Zimmer*, 313 F.3d at 1222-23; *In re Lane*, 280 F.3d at 669; *In re Pond*, 252 F.3d at 127; *In re Tanner*, 217 F.3d at 1359-60; *In re Bartee*, 212 F.3d at 288-91; *In re McDonald*, 205 F.3d at 609-612; *In re Griffey*, 335 B.R. at 167-70; *In re Mann*, 249 B.R. at 840; *In re Fisette*, 455 B.R. at 181-83.

[25] *In re Gerardin*, 447 B.R. 342, 349 (Bankr. S.D. Fla. 2011).

[26] *In re Quiros-Amy*, 456 B.R. 140, 146-47 (Bankr. S.D. Fla. 2011).

chapter 20 debtors are not eligible for a discharge, those courts reason that chapter 20 debtors cannot confirm a plan that strips off a wholly unsecured junior mortgage.[27] But that reasoning is unpersuasive for two reasons: (i) strip off does not implicate § 1325; and (ii) relief under chapter 13 is not contingent on eligibility for a discharge.

Strip Off Does Not Implicate § 1325

Section 1325(a)(5), by its terms, only applies to "allowed secured claims." And as *Tanner* and the other circuit courts have made clear, the holder of a wholly unsecured junior mortgage does not have a "secured claim."[28] A mortgage holder's lien is extinguished under § 1322(b)(2). Courts refusing to permit lien stripping in chapter 20 cases, however, protest that § 1325(a)(5) must be applicable because, according to those courts, the holder of a wholly unsecured mortgage cannot have anything other than an "allowed secured claim."[29] After all, the chapter 20 debtor's personal liability on the mortgage was extinguished in the chapter 7 case.[30]

But that approach reflects a misunderstanding of the effect of a chapter 7 discharge. To be sure, the chapter 7 discharge does extinguish a debtor's personal liability on a secured claim. But it does not extinguish the underlying debt.[31] Rather, the effect of the discharge is to void any judgment on the debt to the extent the judgment is a determination of the debtor's personal

---

[27] *In re Gerardin*, 447 B.R. at 349; *In re Quiros-Amy*, 456 B.R. at 146-47.

[28] *See, e.g.*, *In re Zimmer*, 313 F.3d at 1222-23; *In re Lane*, 280 F.3d at 669; *In re Pond*, 252 F.3d at 127; *In re Tanner*, 217 F.3d at 1359-60; *In re Bartee*, 212 F.3d at 288-91; *In re McDonald*, 205 F.3d at 609-612; *In re Griffey*, 335 B.R. at 167-70; *In re Mann*, 249 B.R. at 840; *In re Fisette*, 455 B.R. at 181-83.

[29] *In re Quiros-Amy*, 456 B.R. at 146-47.

[30] *Id.*

[31] *In re Green*, 310 B.R. 772 (Bankr. M.D. Fla. 2004); *see also In re R.J. Reynolds-Patrick Cnty. Mem'l Hosp., Inc.*, 305 B.R. 243, 248 (Bankr. W.D. Va. 2003) (explaining that "[w]hile a discharge enjoins a creditor from attempting to collect the discharged debt as a personal liability of the debtor, it does not extinguish the debt"); *In re Dabrowski*, 257 B.R. 394, 413 (Bankr. S.D.N.Y. 2001) (holding that landlord was entitled to pursue *in rem* remedies because chapter 7 discharge only limits enforceability but does not extinguish underlying debt).

liability. The discharge also operates as an injunction—commonly called the "discharge injunction"—against the commencement or continuation of any action to collect on the debt.[32] A creditor violating the discharge injunction may be subject to contempt sanctions.[33]

To the extent a debtor does not seek relief in bankruptcy court for violation of the discharge injunction, the debtor may raise the discharge as an affirmative defense to any asserted claim based on the discharged debt.[34] In fact, state courts have concurrent jurisdiction to consider whether some types of debts were discharged in a prior bankruptcy.[35] State courts, for example, have concurrent jurisdiction over claims by unscheduled creditors[36] and claims for domestic support obligations.[37] So the discharge does not extinguish the underlying debt.

---

[32] 11 U.S.C. § 524(a)(2).

[33] *Espinosa v. United Student Aid Funds, Inc.*, 553F.3d 1193, 1205 n.7 (9th Cir. 2008) (explaining that a "party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the Bankruptcy Code") (quoting *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006)); *In re Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011) (observing that "'[t]here is no serious question that a violation of the discharge provided in § 524(a)(2) is punishable by contempt'") (quoting *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009)).

[34] *See, e.g.*, *Rhodes Life Ins. Co. v. Mendy Props., LC*, 2009 WL 1212476, at *3 n.12 (E.D. La. Apr. 30, 2009) (explaining that a debtor may assert the discharge as an affirmative defense in a pending state court case); *In re Hitt*, 2008 WL 924528, at *1 (Bankr. E.D.N.C. Apr. 3, 2008) (explaining that after a case has been closed, the debtor can litigate the dischargeability of a debt by "assert[ing] the bankruptcy discharge as an affirmative defense in order for the court with jurisdiction over the lawsuit to determine dischargeability"); *In re Cheely*, 280 B.R. 763, 765 (Bankr. M.D. Ga. 2002) (explaining that if a "creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense").

[35] *See, e.g.*, *In re Hamilton*, 540 F.3d 367, 373 (6th Cir. 2008) (observing that "courts have interpreted 28 U.S.C. § 1334(b) as granting concurrent jurisdiction to state courts to determine the nondischargeability of debts"); *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586 (7th Cir. 2005) (explaining that "state courts have concurrent jurisdiction with the bankruptcy courts to determine whether or not a debt is dischargeable in bankruptcy"). On the other hand, bankruptcy courts have exclusive jurisdiction to determine the dischargeability of debts specified in paragraphs (2), (4), and (6) of 11 U.S.C. § 523(a). 11 U.S.C. § 523(c).

[36] *See, e.g.*, *In re McGhan*, 288 F.3d 1172, 1181 (9th Cir. 2002) (holding that "[s]tate and federal courts have concurrent jurisdiction over actions brought under § 523(a)(3)" to extend the discharge to creditors who were not scheduled but had actual notice of the bankruptcy); *In re Christensen*, 2011 WL 2185854, at *4 (Bankr. N.D. Ala. Feb. 18, 2011) (holding that "a determination of dischargeability under § 523(a)(3) may be made by state courts as well as bankruptcy courts—those courts have concurrent jurisdiction").

[37] *Swartling v. Swartling (In re Swartling)*, 337 B.R. 569, 572 (Bankr. E.D. Va. 2005) (holding that state court had concurrent jurisdiction with bankruptcy court to determine whether chapter 7 debtor's obligations to his former wife were in nature of "support" and whether they were excepted from discharge.)

Nor does the discharge affect the lien.[38] A chapter 7 discharge, by itself, does not extinguish any liens securing the debt.[39] Any lien rights survive bankruptcy and are unaffected by the discharge.[40] In reality, the chapter 7 discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."[41] A secured creditor's lien continues as an *in rem* claim against the debtor's property.

And that leads to a second critical point: there is a difference between the term of art "secured claim," on the one hand, and the notion that a creditor has a security interest or lien outside of bankruptcy, on the other hand.[42] Having a security interest or lien outside of bankruptcy is translated under bankruptcy laws as having the "rights" of a secured creditor, not necessarily as being the holder of a secured claim.[43] Once a determination has been made under § 506 that the remaining *in rem* claim is wholly unsecured and that the creditor holds no secured claim in the bankruptcy case, the creditor is left with its nonbankruptcy rights. The debtor may then modify those "rights" under § 1322(b)(2) by voiding the security interest.

This is the point that the courts in *In re Gerardin* and *In re Amy-Quiros* overlook. Those courts suggest that pro-lien stripping courts—such as the court in *In re Fisette*—are effectively resurrecting the unsecured claim that was discharged in the previous chapter 7 case.[44] But that is

---

[38] *Fisette v. Keller (In re Fisette)*, 455 B.R. 177, 184 (8th Cir. BAP 2011).

[39] *See, e.g., Isom v. IRS (In re Isom)*, 901 F.2d 744, 745 (9th Cir. 1990).

[40] *Long v. Bullard*, 117 U.S. 617, 620-21 (1886).

[41] *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

[42] *In re Jennings*, 454 B.R. 252, 254 (Bankr. N.D. Ga. 2011) (citing *In re Okosisi*, 451 B.R. 90, 93 (Bankr. D. Nev. 2011)).

[43] *In re Jennings*, 454 B.R. at 254.

[44] *In re Quiros-Amy*, 456 B.R. 140, 146-47 (Bankr. S.D. Fla. 2011).

not the case. Nor does the reasoning of the pro-lien stripping courts hinge on the existence of an unsecured claim. In fact, the pro-lien stripping courts recognize that upon confirmation of a plan in a chapter 20 case, the holder of a wholly unsecured junior mortgage lien holds neither a secured claim—by virtue of the § 506 valuation—nor an unsecured claim enforceable against the debtor—by virtue of the prior discharge. Confirmation of the plan in such cases, instead, implements the debtor's right under § 1322(b)(2) to modify—*not the claim*—but the "rights" that the holder of the previously discharged claim has under applicable nonbankruptcy law. As noted in *Nobelman*, those "'rights' . . . are reflected in the relevant mortgage instruments, which are enforceable under [state] law."[45] As described by the Supreme Court, those rights include "the right to retain the lien until the debt is paid off."[46] It is this right that can be modified by strip off in a chapter 20 case.

This is exactly what *Tanner* and the other circuit court cases recognized in holding that debtors may strip off wholly unsecured junior mortgages. Yet, *Gerardin* disregards the holding in *Tanner* as "inapposite" even though *Tanner* is the sole Eleventh Circuit precedent for allowing a debtor to strip off of a wholly unsecured junior lien on a principal residence. *Gerardin* disregards *Tanner* because *Tanner* "did not consider how § 1325(a) and a prior bankruptcy discharge might impact the treatment of the lien."[47]

*Tanner*, of course, did not deal with the issue the Court confronts in this case. And it is also true that the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") did amend § 1325(a)(5) to require, at least as is relevant in this case, a chapter 13 plan to provide that

---

[45] *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993).

[46] *Id.* at 330.

[47] *In re Gerardin*, 447 B.R. 342, 346 (Bankr. S.D. Fla. 2011).

a secured creditor retain its lien until discharge. BAPCPA also amended § 1328 to add

subsection (f), which provides that the court shall not grant a discharge to a chapter 13 debtor

who received a discharge in a chapter 7 case filed within four years of the chapter 13 case.

But neither of those additions in BAPCPA did anything to affect the rationale of *Tanner*.

After all, Congress added the new provision in § 1325(a)(5)(B) to secure the right to deferred

payments under the chapter 13 plan to the extent of the amount of the allowed secured claim.

There is nothing in BAPCPA's legislative history to suggest—nor has any court ever held—that

the new provision in § 1325(a)(5)(B) was intended to abrogate the court's analysis in *Tanner*.

Nor is there anything in BAPCPA's legislative history that suggests Congress added § 1328(f) to

limit a debtor's right to strip off a wholly unsecured junior mortgage, as enunciated in *Tanner*

and the other circuit court decisions. Given that, it is hard to see how *Tanner* is not pertinent.

To the contrary, *Tanner* is pertinent because it follows the same analysis employed by the

Supreme Court in *Nobelman*—albeit with respect to a wholly unsecured junior mortgage. For

these reasons, the Court disagrees that *Tanner* is not pertinent here and that § 1325 is the

operative provision.[48] Section 1325 would only apply where the debtor was attempting to

restructure the payment terms of an allowed secured claim. Section 1325 does not apply where

the debtor is simply modifying the state law lien rights of a creditor that does not hold an allowed

secured claim under § 506. The power to modify comes from §1322(b)(2)—not § 1325.

## Eligibility for a Discharge is not a Requirement for Relief Under Chapter 13

Section 1328(f)(1) merely precludes a chapter 13 debtor from receiving a discharge if the

debtor received a discharge in a chapter 7 case filed within four years of the chapter 13 case. But

---

[48] The Court, however, does agree with *Gerardin*'s conclusion that § 506(d) is not a "miracle lien remover" and is not "self-executing." As noted by *Gerardin*, if § 506 alone authorized a strip off in these circumstances, then it would be applicable in chapter 7. But *Dewsnup* makes clear that § 506 can only be effective when operating in tandem with another section of the Bankruptcy Code.

that section in no way limits any other rights available to the debtor under the Bankruptcy Code, such as the right to strip off unsecured junior liens under § 506(a) and § 1322.[49] In fact, nowhere in the Bankruptcy Code is eligibility for a discharge a condition for filing or maintaining a bankruptcy case or receiving the various forms of relief that may flow from that case. Simply put, Congress provided no limitation on a debtor's eligibility to be a chapter 13 debtor after receiving a chapter 7 discharge.[50]

To start with, Bankruptcy Code § 109—entitled "Who may be a debtor"—contains express limitations on eligibility for chapter 13 relief.[51] Eligibility for a discharge is not included among those limitations. Similarly, the operation of the automatic stay under § 362 is not dependent upon the debtor's eligibility for a discharge. And the limitations imposed under BAPCPA for repetitive filers are based solely on the timing of a dismissal of a previously filed case within one year. And even in a case where the previous chapter 7 was filed within one year, courts routinely extend the automatic stay under § 362(c)(3) if the court finds that the subsequent case was filed in good faith.

A central purpose of chapter 13 is to save homes.[52] It is not uncommon for a debtor, even after discharging various unsecured debts in a chapter 7, to suffer new financial problems leading the debtor to default on their home mortgage. Chapter 13 is available to allow the debtor to cure

---

[49] *See, e.g., In re Fair,* 450 B.R. 853, 856-57 (Bankr. E.D. Wis. 2011).

[50] *In re Jennings*, 454 B.R. 252, 258 (Bankr. N.D. Ga. 2011).

[51] 11 U.S.C. § 109(e).

[52] *In re Whitlock*, 308 B.R. 917, 923 (Bankr. M.D. Ga. 2004) (explaining that "[o]ne of the primary reasons why Congress created Chapter 13 of the Bankruptcy Code was to afford debtors an opportunity to save their residences"); *In re Smith*, 1999 WL 33582223, at *2 (Bankr. C.D. Ill. Oct. 5, 1999) (observing that the "primary purpose of Chapter 13 is to allow debtors to save their homes from foreclosure").

any such default within a reasonable time and reinstate payments to save the home.[53] The

ineligibility of the debtor for a discharge is not implicated in such cases. As succinctly described

by the Fourth Circuit, in many chapter 13 cases, "it is the ability to reorganize one's financial life

and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'"[54]

## Good Faith Is Still a Requirement for Confirmation

But debtors do not enjoy an absolute right to strip off unsecured liens in a no-discharge

chapter 13 case. Courts allowing chapter 20 strip offs have consistently noted that the bankruptcy

court must still determine whether the chapter 13 plan was filed in good faith.[55] Some courts

have suggested that filing a chapter 13 case "solely for the purpose of the lien avoidance"

suggests manipulation of the Bankruptcy Code and is evidence of bad faith. This Court is not

prepared to make such a leap absent other evidence.[56] This is an issue that must still be addressed

in the context of plan confirmation.

## Effectiveness of Strip off Requires Plan Completion

Importantly, courts that allow strip offs in chapter 20 cases typically still require that all

plan payments be completed in the case as a condition to the strip off.[57] While this could be

required simply as a matter of satisfying the good-faith requirement for plan confirmation,[58] the

better rationale for this conclusion is that it is only after a debtor has successfully completed all

---

[53] 11 U.S.C. § 1322(b)(5).

[54] *In re Bateman*, 515 F.3d 272, 283 (4th Cir. 2008).

[55] 11 U.S.C. § 1325(a)(3).

[56] *In re Fair*, 450 B.R. 853, 858 (E.D. Wis. 2011) (citing *In re Hill*, 440 B.R. 176, 183 (Bankr. S.D. Cal. 2010)).

[57] *See, e.g.*, *In re Okosisi*, 451 B.R. 90, 99 (Bankr. D. Nev. 2011); *In re Miller*, 462 B.R. 421, 433 (Bankr. E.D.N.Y. 2011).

[58] 11 U.S.C. § 1325(a)(3).

16

plan payments required by the chapter 13 plan that the provisions of the plan—including any lien avoidance—become permanent.[59] That rationale is supported by § 1327, which provides that the confirmed plan is binding on all creditors regardless of whether the creditor has accepted, rejected, or objected to the plan.[60] And even more importantly, confirmation of the plan vests all property of the estate in the debtor free and clear of any claims of any creditor provided for by the plan.[61] Accordingly, it is only appropriate to provide for a permanent lien avoidance if the debtor has fully performed under the plan.[62]

### <u>Conclusion</u>

It is well established that a chapter 20 case is permitted under the Bankruptcy Code. Equally clear is that a debtor in a chapter 13 case may strip off a wholly unsecured mortgage on the debtor's principal residence. This strip off is accomplished, first, through a determination under § 506(a) that the creditor does not hold a secured claim and, second, by modifying the creditor's "rights" under § 1322(b)(2), by avoiding the lien that the creditor would otherwise be entitled to under nonbankruptcy law. As such §1325(a)(5) does not come into play, and the debtor's ineligibility for a discharge is irrelevant to a strip off in a chapter 20 case.

Accordingly, for these reasons, it is

**ORDERED:**

1.      The objections to the Debtor's motion to determine secured status and to confirmation of the Debtor's chapter 13 plan are overruled to the extent they are based on the Debtor's ineligibility for a discharge in this chapter 13 case.

---

[59] *In re Okosisi*, 451 B.R. at 100.

[60] 11 U.S.C. § 1327(a)(1); *see also In re Okosisi*, 451 B.R. at 100.

[61] 11 U.S.C. § 1327(b) & (c).

[62] *In re Okosisi*, 451 B.R. at 99.

2.      The Court will consider any remaining issues with respect to the motion to determine secured status and confirmation of the chapter 13 plan at the confirmation hearing currently scheduled for April 2, 2012.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on ___February 24, 2012___

_____
Michael G. Williamson
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.